## Case No. 16,321.

### UNITED STATES v. SMITH.

[1 Bond, 68;[1] 5 Am. Law Reg. 268.]

District Court, S. D. Ohio. Oct. Term, 1856.

OFFICES OF UNITED STATES—COMPENSATION—SET-OFF—ACCOUNTING OFFICERS—DOUBLE SALARIES—TERRITORIAL SECRETARY—COMMISSIONS.

1. In a suit by the United States to recover a balance due on the books of the treasury department, the defendant can not give in evidence, as a set-off, a claim against the government, which has not previously been presented to, and disallowed by, the proper accounting officer, without proving that it was not before in his power to produce the voucher for such claim, and that he was prevented from exhibiting it, "by absence from the United States, or some unavoidable accident."

2. The rejection of an account or claim against the United States, by an accounting officer of the government, authorized by a special act of congress to adjust the same on equitable principles, does not preclude the defendant, when sued, from setting up such rejected claim or account as a set-off.

3. There is no authority, either in the executive or judicial department of the government, to allow a claim against the United States, which is prohibited by law.

4. The legislation of congress prohibits any extra compensation to an officer for services performed, properly pertaining by law to his office.

5. The defendant, as secretary of Minnesota territory, having a fixed salary as such, was not entitled to claim, in addition thereto, the salary of governor, during the absence of that officer; as the act organizing the territory made it the duty of the secretary, "in case of the death, removal, resignation, or necessary absence of the governor," to discharge the duties of that office, without any provision for an increase of compensation to the secretary.

6. The proviso in the second section of the act of September 30, 1850, expressly prohibits the allowance of double salaries in all cases.

7. The act organizing the territory of Minnesota, made the secretary the disbursing officer of the territorial government; and he can not claim a commission on such disbursements.

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

8. Where an officer, with a salary payable quarterly, is appointed for four years. "unless sooner removed by the president," and a removal is made during a current quarter. he is not entitled to his salary to the end of the quarter.

9. By the organic act of Minnesota territory, the general government became pledged to defray "the expenses of the legislative assembly, the printing of the laws, and other incidental expenses;" and the defendant is entitled to a credit for services rendered, or expenditures made, within the fair scope and meaning of these terms, so far as they did not pertain to the office of secretary of the territory; but the words "other incidental expenses" must be restricted to such expenses as were incidental to the legislative assembly and the printing of the laws.

10. The second section of the act of August 29, 1842 [5 Stat. 541]. which applies to territories, then or afterward to be organized, provides that no act of the legislature of a territory shall be deemed of sufficient authority for a payment by the national treasury, and requires proper vouchers and proof of the same to be exhibited to the accounting officers of the proper department.

11. In a judicial case involving the accounts of a former secretary of a territory, in which credits are claimed which have been rejected by the treasury department. the fact that such credits have not been embraced in the estimate required by the organic act of the territory, to be previously made by the secretary of the treasury does not preclude their allowance by a jury, if not objectionable on other grounds.

D. O. Morton, U. S. Dist. Atty.

Corwin & Probasco, Judge Johnson, and Mr. Spooner, for defendant.

LEAVITT, District Judge (charging jury). This suit is brought on the official bond of the defendant [Charles K. Smith], as late secretary of the territory of Minnesota, dated March 31, 1849. A balance of $4,078.41 is claimed as due to the United States; and treasury statements are in evidence, showing such balance against the defendant. The defendant exhibits claims against the government exceeding the amount of such balance, and insists on a judgment in his favor for the sum alleged to be due him. The larger portions of the items of claims exhibited in the defendant's account have been passed upon and disallowed by the treasury department, under the provisions of a special act of congress authorizing their adjustment on equitable principles. The defendant also claims an allowance of about one thousand dollars, embracing items of charge against the United States, which have not been presented for payment or allowance at the treasury department, and, consequently, have not been rejected by it. This latter class of vouchers was permitted to go in evidence to the jury, upon a suggestion that the defendant would be able to show reasons for their non-presentation which would render them admissible, and with the understanding that otherwise they were to be withdrawn from the consideration of the jury. The fourth section of the act of congress of March 3, 1797 (1 Stat.

515), provides "that in suits between the United States and individuals, no claim for a credit shall be admitted upon trial but such as shall appear to have been presented to the accounting officers of the treasury for their examination and by them disallowed, in whole or in part, unless it should be proved to the satisfaction of the court that the defendant is, at the time of the trial, in possession of vouchers not before in his power to procure, and that he was prevented from exhibiting a claim for such credit at the treasury by absence from the United States, or some unavoidable accident." No proof has been exhibited by the defendant which brings the items referred to within either of the exceptions stated in the foregoing provision of the act of congress, and they must, therefore, be entirely excluded from the consideration of the jury. The law is imperative on this subject, and vests no discretion in the court. There may be cases in which its operation may savor of harshness, or even of injustice, but there can be no doubt that such a provision is necessary to prevent the presentation of fraudulent or fictitious claims upon the government.

The other items of charge in the defendant's account having been presented to, and disallowed by, the proper accounting officer, under an act of congress authorizing their settlement upon principles of equity, are properly in controversy in this suit. Such rejection of these items, by the treasury department, is not decisive of the rights of the claimant. The constitution of the United States vests all the judicial power of the government in the courts of the Union; and it is the unquestionable right of the citizen, in a suit brought by the United States for the recovery of a balance claimed, if his credits have been disallowed by the accounting officer, to present them for the decision of a court and jury. There is an obvious necessity that the government should hold its subordinate agents to great strictness, and the most rigid accountability in all transactions involving official liability; and in discharging this duty, the highest executive officers must be guided by law, and are not at liberty to adopt their own views of right and justice as the basis of their action. Even in cases of reference to them by act of congress, with a power to adjust and settle accounts on principles of equity, no authority is thereby implied to allow a claim against the government which is expressly, or by clear implication, prohibited by law. And the same principle of action applies to and must govern the court of the United States in adjudicating between the government and a citizen, as to matters of account. If the allowance of a claim is forbidden by law, a court and jury can not give it legal validity; but if not thus prohibited, and it is in its character just and equitable, though it may have been rejected by the proper officer, it may be allowed

in a judicial tribunal, if properly authenticated by evidence. When the government comes before such a tribunal as a litigant party, its position is that of equality with the citizen; and it is entitled to no special immunities, unless expressly conferred by law. If it shall happen that even the application of these liberal principles, in such a controversy, shall fail to secure to the individual citizen the full measure of justice, his only remedy is an application to the legislative department of the government; the powers of which are ample to administer aright on the most comprehensive principles of equity, with no limitations except those imposed by the constitution.

The items of the account exhibited by the defendant, and on which the jury are to pass, are numerous, and include claims for various services and expenditures, as secretary of the territory of Minnesota, embracing a period between March 31, 1849—the date of his appointment to office—and November 14, 1851, when he was superseded by the appointment of another person. I will not detain the jury by a special reference to all the credits claimed by the defendant in his account now exhibited, but having noticed a few of them, in respect to which the construction of the court has been called for, will state some general principles of law applicable to the whole account, which may afford a satisfactory guide to the jury, in their considerations as to its proper adjustment.

I may remark here, that it is insisted, by the counsel for the government, that all the items of charge in the defendant's account are liable to the objection, either that they involve claims for services rendered by him as secretary of the territory, legally pertaining to the office, and for which he is entitled to no compensation beyond the salary given him by law—or, if not included in this class, the services rendered and expenditures made were in virtue of laws or resolutions passed by the territorial legislature, for which there is no legal claim on the treasury of the United States. It may now be regarded as a principle which admits of no question, that no officer of the United States, having a fixed salary, is entitled to any extra compensation for the performance of services or duties which pertain to his office by law. It is wholly unnecessary to refer to the legislation of congress, or the decisions of the courts of the Union on this subject. The incumbent of an office is bound to perform all the duties belonging to it, without extra compensation. No man is under any necessity to accept an office, but having accepted it, the obligation rests upon him to discharge its duties for the remuneration which the law provides. He accepts it with a knowledge of the pay or salary attached to it, and, though its duties may be onerous, and the

compensation inadequate, if he chooses to retain the office he must be content with what the law gives.

Some of the charges in the defendant's account are clearly within the objections just stated, and can not, therefore, be allowed by the jury. I will notice, very briefly, some of the principal items which, in the judgment of the court, must be rejected on this ground. The charge of $1,004 for salary as acting governor of the territory during the absence of the governor, is clearly within the prohibition adverted to. There are two distinct periods of service charged by the defendant, for which he claims the salary of the governor, in addition to that of secretary of the territory. The first is, from November 8, 1849, to February 12, 1850, amounting to $645—the second, from April 10, 1851, to the 2d of June following, amounting to $358.83. The charge for the latter period is within the operation of the proviso of the second section of the act of September 30, 1850, and its allowance is expressly forbidden by it. This proviso is in these words: "That hereafter the proper accounting officers of the treasury, or other pay officers of the United States, shall in no case allow any pay to one individual for the salaries of two different offices, on account of having performed the duties thereof, at the same time." But, without reference to this act of congress, the whole of this charge is liable to the objections, that the service was one which he was bound to perform as secretary of the territory, and for which no extra compensation can be allowed. The third section of the act for the organization of Minnesota territory authorizes and requires the secretary to discharge the duties of the executive, "in case of the death, removal, resignation, or necessary absence of the governor from the territory." The defendant took the office of secretary knowing that, in any of the emergencies specified, the duties of the governor would devolve on him. And the law made no provision for any additional compensation in that event. In assuming the office of secretary of the territory the defendant became bound to act as governor, if necessary under the law, as fully as he was obliged to discharge any other duty as secretary. It pertained to the office of secretary, though not strictly within the legitimate range of its duties. The salary certainly was less than the labor and responsibility required, but this is an evil which this court and jury can not remedy without usurping legislative power.

There is another item, $557, charged in the defendant's account as a commission of one per cent. on funds disbursed by him as secretary. This is liable to the objection stated in the foregoing item. By the eleventh section of the organic act of the territory, the secretary is expressly made the disbursing officer of the territory, and is required to

account to the secretary of the treasury of the United States for the manner in which the funds have been expended. This was, therefore, one of the duties required of him by law, as secretary, for which he is not entitled to any extra allowance.

I will here notice briefly another charge in the defendant's account that must be rejected. I refer to his claim for salary as secretary for the whole of the quarter ending December 31, 1851. It seems he entered on his duties as secretary in March, 1849, was removed by the president the latter part of October, 1851, but continued in the actual performance of his duties till the 14th of November in the last-named year. The defendant has been allowed his salary by the treasury department to the date of his removal, but it has been rejected for the balance of the quarter. No doubt can exist to his right to it to the 14th of November, when he was in fact superseded by his successor. It is insisted, however, that he is entitled to pay for the whole quarter. The argument is, that, where an officer whose salary is payable quarterly is removed, by the act of the president, before the expiration of a current quarter, he is entitled to his pay to the end of it. This is believed to be in opposition to the uniform practice of the government in such cases. I do not propose to discuss the constitutional question of the power of the president to remove from office, at his own will, without presenting to the senate the grounds of the removal and obtaining its approval of the act. The defendant, conformably to the act organizing Minnesota territory, was appointed to the office of secretary for four years, "unless sooner removed by the president of the United States." For many years past this has been the usual mode of commissioning executive and ministerial officers; and the power of removal, with or without cause, has been freely exercised by those who have held the presidential office for the last thirty years. True, there were those at an early period of our national government who contended that the spirit, if not the letter of the constitution, required the president to submit the causes of removal from office to the senate; and that, as it was only by and with the advice and consent of that body that an appointment could be made, the same formality was required in removing from office. Although there may be some, at this day, who maintain this view, the current of opinion seems to set strongly in the opposite direction. The practice of the government has been so long settled, and is so generally acquiesced in, that there is little probability of a change. And if conceded that the power of removal, without restriction or limitation, belongs to the president, the official duties of the incumbent, and with it, his right to salary or compensation cease when the successor assumes the office. The defendant's claim for salary, from the 14th of November to the 31st of December, will therefore be rejected by the jury.

Before passing to the consideration of the other part of the defendant's account, I will notice an item of $116, charged as the expenses of a visit to Washington, to procure the funds appropriated by congress for the support of the territorial government for the year 1850. From some cause, great delay had occurred in remitting the funds appropriated, to the seat of government of the territory. To hasten this remittance, the defendant made the journey to Washington. Its necessity is not very obvious, so far as there is any evidence on the subject. But if the jury believe the public interests of the territory required the journey, there is no reason why the defendant should not be reimbursed to the amount of his actual expenses.

It would detain the jury unreasonably, and, as I think, unnecessarily, to notice in detail the remaining items of charge in the defendant's account. In their retirement they will have the opportunity of giving to the account, and the vouchers which sustain it, a critical inspection. So far as any of these may be for services or duties performed, belonging to the office of the defendant, as secretary of the territory, they will be disallowed, on the grounds already fully stated. There are others, however, which stand on another basis, and which present a different question for the consideration of the court and jury. Their allowance or disallowance will depend mainly upon the provisions of the act of congress for the organization of the territory of Minnesota. To such of them as bear upon the items in controversy, I will now briefly ask the attention of the jury. This organic act was approved and took effect March 3, 1849. Section 4 vests the legislative power of the territory in the governor and a legislative assembly. Section 6 provides that the legislative power shall extend to all rightful subjects of legislation, consistent with the constitution of the United States, and the provisions of said act; and requires that all the acts of the governor and legislative council shall be submitted to the congress of the United States; and if disapproved, shall be null and void. By section 12, the laws in force in the territory of Wisconsin, at the date of her admission into the Union, are declared to be in force in Minnesota, so far as they were compatible with the act organizing the last named territory, subject to amendments and repeal by the legislature. By the same section, the laws of the United States were extended over, and declared to be in force in, Minnesota, so far as they were applicable. Among the provisions of section 11 is one declaring that there shall be an annual appropriation by congress of one thousand dollars, to be expended by the governor to de-

fray the contingent expenses of the territory, and also, annually, a sufficient sum "to defray the expenses of the legislative assembly, the printing of the laws, and other incidental expenses." This appropriation is to be made upon the estimate of the secretary of the treasury, and to be expended by the secretary of the territory. Section 17 appropriates five thousand dollars for the purchase of a library for the benefit of the territory.

These are all the provisions of the organic act which it is material to notice. The act, as is obvious, is based on the admitted doctrine that a territory is, in some sense, a ward of the general government, and that while in its state of pupilage, the primary and paramount power of legislation over it is vested in congress. The act of congress, however, granted to the people of Minnesota territory the right to elect a local legislature, in which was vested the ordinary powers of legislation, subject to the restrictions and limitations specified. Among the powers thus conferred on the legislative body, was the power of taxation for legitimate territorial purposes. But the obligation was assumed by the general government to provide for the payment of the salaries and compensation of all the officers, whose appointments were authorized by the act. It was also pledged to defray the contingent expenses of the territory, to an amount not exceeding one thousand dollars, and also "the expenses of the legislative assembly, the printing of the laws, and other incidental expenses."

One of the important questions presented in this case is, whether the charges contained in the defendant's account, which have not before been brought specially to the notice of the jury, and upon which the views of the court have been stated, are fairly within the scope and range of the words just quoted from the organic act. The jury will observe, from an inspection of the vouchers for that part of the account referred to, that they embrace charges for services rendered, and expenditures made, by the defendant alleged to be necessarily connected with, or incidental to, the administration of the territorial government. Without referring specifically to these items, I may remark here that so far as these claims are for services outside of the defendant's official duties, as secretary, and may come within the designation of "expenses of the legislative assembly, the printing of the laws, or other incidental expenses," I see no objection to their allowance, if sustained by proof to the satisfaction of the jury. The act of congress sanctions the payment of expenses, which may be classified under these heads, from the national treasury; and within the limitations already indicated, they would seem to be proper items of charge against the United States. But it is clear congress did

not intend to impose an obligation on the general government to meet every expenditure which might be authorized by the territorial legislature. That body was vested with a discretionary power of legislation, in regard to the local or internal interests of the territory; but any expenditure authorized for such purposes was to be paid out of the territorial treasury. And it is obvious, that an unlimited power, in the legislature of a territory to authorize expenditures, which were to be paid by the general government, would lead to great abuses, and impose a grievous burden on the national treasury. There is not only no such power in the territorial government, but congress has expressly provided, that in reference to the appropriation of money for expenditures in a territory, to be paid by the general government, the acts of a territorial legislature are not conclusive. By section 2 of the act of August 29, 2842 (5 Stat. 541), it is expressly required, as to all territories, then or afterward to be organized, that the accounts for such expenditures shall be settled and adjusted at the treasury department; and it is provided, "that no act, resolution, or order of the legislature of any territory, directing the expenditure of the sum, shall be deemed a sufficient authority for such disbursement, but sufficient vouchers and proof for the same shall be required by said accounting officers."

It shall be the duty of the jury, in reference to the class of charges now referred to, to determine from an examination of the vouchers, and other evidence adduced by the defendant, whether they are fairly comprehended under the heads of "expenses of the legislative assembly, the printing of the laws, and other incidental expenses." It is difficult, if not impossible, to define with certainty what may be rightfully included in these terms. I should not probably render the jury any essential aid, if I were to attempt to prescribe a rule for their action in this regard. I may remark, generally, that it is evidently within the spirit of the language used in the act of congress, that the expenses incurred under any of the heads stated, should be necessary and proper, and the sums reasonable. This would necessarily lead to the rejection of any vouchers for expenditures for purposes not required in the proper discharge of the duties of the legislature of the territory, and not in promotion of the public interests. So, in relation to the printing of the laws passed by the legislature. The expenses incurred must have reference and be limited to the object stated. The words, "other incidental expenses," are of comprehensive import, and were, without doubt, adopted by congress, to provide for any necessary expenses which could not be foreseen, and specifically pointed out. The fair construction of these words, in the connection in which they are used, would seem not to justify the conclusion

that they were intended to include all expenditures which might be deemed incidental to the administration of the government of the territory. They must be limited in their import to the necessary incidental expenses of the legislative assembly and the printing of the laws. Within the limits thus indicated, if the evidence of the expenditures and services is satisfactory to the jury, and the charges are not within any of the prohibitions previously stated, they would seem to have the sanction of law, and may properly be allowed as credits to the defendant.

It is proper that I should here briefly notice an objection urged to the defendant's account, by the counsel of the United States, founded on the position that they have not been included in any estimate made by the secretary of the treasury, and can not, therefore, be viewed as legal setoffs to the claim presented by the government. It is true the act organizing the territory of Minnesota requires the secretary of the treasury to make an estimate, in advance of the appropriation by congress, of the expenses of the territorial government. Without discussing this subject, it may be sufficient to state that the duty enjoined on the secretary of the treasury is directly to, and obligatory on him. But if he omits to make an estimate, or if that estimate proves insufficient to meet the just expenditures contemplated by the act of congress, it affords no reason why the claims of an individual, coming fairly within the scope and intention of the act, should not be allowed. The question now presented, arises in a judicial case, and the true inquiry is not whether there has been a previous estimate, embracing the charges claimed, but whether they are just, and not within any express prohibition of law.

I may also refer to the letters from the comptroller of the treasury, addressed to the defendant, while he held the office of secretary of the territory, which are in evidence. These, it is insisted, authorize a part of the expenditures charged in the defendant's account. I shall not notice, in detail, the contents of these letters. It will be proper for the jury to refer to them, in their retirement, as a part of the evidence in this case. Whatever may be their purport, it can not be claimed for them, that they invalidate the positive provisions of law. So far, however, as they may be viewed as authorizing any of the charges or expenditures of the defendant, they may properly be considered by the jury; and as to items concerning which they might otherwise be in doubt, may exercise an influence in their decision.

With these views, the case is submitted to the jury. They will apply the law, as I have attempted to state it, to the evidence before them, and decide what portion of the credits claimed by the defendant shall be allowed, and what shall be rejected.

The jury returned a verdict for the United States for $1,536.