## GAYER *v.* UNITED STATES.

*(District Court, E. D. South Carolina.* January 12, 1888.)

1. COURTS—FEDERAL JURISDICTION—ELECTION SUPERVISOR—ACTION FOR COMPENSATION.
   The district court has jurisdiction of an action against the United States for services and expenses of a chief supervisor of elections, upon a claim for less than $1,000 in value, which had been refused by the accounting officer of the treasury department.

2. ELECTIONS—CHIEF SUPERVISOR—COMPENSATION.
   A chief supervisor of elections is not entitled to fees for preparing and presenting applications for supervisors for the approval of a judge.

3. SAME.
   But he is entitled to fees for filing and indexing such applications, under Rev. St. § 2031, allowing for filing and caring for every return, * * * document, or other paper, 10 cents, and for entering and indexing the records of his office 15 cents per folio.

4. SAME.
   He is also entitled to compensation for indexing and filing letters and papers.

5. SAME.
   He is also entitled to a per diem of five dollars for 26 days' service, notwithstanding the attorney general, with the sanction of the president, limited the number of days' service of supervisors to five, as he is not properly a supervisor.

6. SAME.
   He is not entitled to fees for filing and indexing appointments of supervisors, but is entitled to fees for recording the same.

7. SAME.
   He is entitled to fees for administering oaths to supervisors, and for certificates, seals, etc., appertaining thereto.

8. SAME.
   He is entitled to fees for preparing and forwarding instructions to supervisors.

9. SAME.
   He is entitled to the value of blanks furnished by him and used in his office, but not to the value of ordinary stationery so used.

10. SAME.
    He is not entitled to an amount paid for assistance on account of his poor health.

Action by a chief supervisor for fees and expenses incurred in performing the duties of that office.

*J. P. K. Bryan,* for plaintiff.

*L. F. Youmans,* Dist. Atty., and *H. A. De Saussure,* Asst. Dist. Atty., for the United States.

SIMONTON, J. This is a suit against the United States brought in this court upon a claim for services rendered pursuant to the provisions of act of congress, approved third March, 1887.

### PLEADINGS.

The complaint alleges that plaintiff was chief supervisor of elections for the state of South Carolina, and acted as such between first July, 1886, and first December of the same year; that he performed services in his said office for the government, and duly presented to the account-

ing officers of the treasury his accounts therefor, approved in proper form, aggregating $1,062.15; that of this account there was allowed and paid to him $136.10, and that the remainder was disallowed; that the sums disallowed were charged according to law, and are justly due. For these, in all $926.05, he brings suit.

The answer admits that plaintiff was chief supervisor as stated, and that he sent on the account for approval as stated; demands strict proof of the services rendered; admits the disallowances, and denies that the sums disallowed constitute any claim against the United States. For a second defense the defendant asserts that this disallowance is a bar to the jurisdiction of this court. For a third defense the answer declares the disallowances to be correct, and in accordance with law. For a fourth defense it asserts that the attorney general, with the sanction of the president, had limited the days of the service of supervisors to the number of five days, and that the charge per diem for a larger number of days cannot be allowed.

### FINDINGS OF FACT.

The plaintiff was chief supervisor of elections in South Carolina, for the general election of 1886, duly appointed under section 2025, Rev. St. The circuit court was opened under the provisions of section 2011, Rev. St., first day of October, 1886; proceeded to business on eleventh October, 1886, and continued open under sections 2012 and 2013 until third day of November, 1886. The plaintiff discharged the duties prescribed in section 2025 up to and including the day after the election, and forwarded his account therefor, whereupon the disallowances were made. The items disallowed are as follows: No. 1. Preparing and presenting for approval 54 applications for appointment of supervisors. No. 2. Filing and indexing the same. The filing has been allowed; the indexing disallowed. No. 3. Indexing and filing 128 letters and papers. No. 4. Per diem as chief supervisor for 26 days, at five dollars per day. No. 5. Filing 54 orders for appointment as supervisors and indexing the same. No. 6. Recording the same orders. No. 7. Filing, indexing, and recording appointments of 689 supervisors. No. 8. Administering oaths to 24 supervisors, and recording the same. No. 9. Twenty-two certified copies of appointment of supervisors for United States marshal, filing, indexing, and recording the same. No. 10. Preparing and forwarding instructions to 689 supervisors. No. 11. Bill for stationery and blanks. (This bill includes all articles of stationery used in an office,—mucilage, ink, erasers, pens, pins, paper,—note and cap,—pencils, sealing-wax, tape, as also envelopes, and printed blanks for supervisors, the application for appointment of, notification to of their appointment, oaths of, instructions to, and certificates of, supervisors.) No. 12. Payment of H. P. Locke as assistant and messenger, 35 days, at $2.50 per day.

All of these items were proved, and the services therein stated were rendered. The account was presented in open court, preparatory to forwarding to the department, on tenth March, 1887, and was sent on after that date.

### CONCLUSIONS OF LAW.

Is this case within the jurisdiction of this court? This court has jurisdiction over all claims not exceeding $1,000, upon any contract, express or implied, made by the United States, for the breach of which the other contracting party could have had redress in any court, if the United States were suable; excepting, however, war claims, and any other claims heretofore rejected or reported upon adversely by any court, department, or commissioner authorized to hear and determine the same. 24 U. S. St. at Large, 505. This is not a war claim, nor was it presented for approval until tenth March, 1887; and, therefore, at the date of the act (March 3d) had not heretofore been passed upon by any court, etc. Nor can the position of the district attorney be sustained, that the court cannot entertain this case because it has already been decided by the department. *U. S.* v. *Smith*, 1 Bond, 68. It is questionable if the court could—it certainly would not—entertain such a claim as this, until it had been presented to, and had been passed upon by, the department. The action of the department does not conclude the court. *U. S.* v. *Wallace*, 116 U. S. 398, 6 Sup. Ct. Rep. 408.

2. The chief supervisor must be appointed from among the commissioners of the court. Rev. St. § 2025. He does not cease to be a commissioner when so appointed. Indeed, he is appointed because he is and continues to be a commissioner. Section 2031. And his accounts are made out, vouched, examined, and certified as are the accounts of a commissioner. Id. Having had imposed on him the performance of services connected with elections, as chief supervisor he exercises the functions of this office in connection with and aided by his function as commissioner. Section 2021. For his extraordinary services as chief supervisor he is allowed the compensation fixed by section 2031. If, in discharging these, he does duties as commissioner, provision for which is not made in this section, he is entitled to the compensation of a commissioner as fixed by section 847. *In re Conrad*, 15 Fed. Rep. 641. In the light of these conclusions let us examine the items disallowed.

No. 1. For preparing and presenting for approval of judge 54 applications for supervisors. It is no part of his duty to prepare applications for supervisors. Indeed, the section 2026 contemplates the receipt by him of the applications of others; the consideration, examination, and presentation whereof must be made by him; so that the preparation of them may be in conflict with his duty. The charge for preparation cannot be allowed. His compensation for receipt, examination, and presentation of them is provided for in his per diem and in other ways.

No. 2. Filing and indexing the 54 applications above. Section 2026 directs the chief supervisor to receive the applications of all parties for appointment as supervisors, and, in presenting the application, he is bound to furnish information to the court respecting the applicants. By section 2031 he is allowed for filing and caring for every return, report, record, document, or other paper, 10 cents, and for entering and indexing the records of his office, 15 cents per folio. These applications come

within the words "document or other paper," and certainly are records of his office. This item is allowed.

No. 3. So also with the third item,—indexing and filing 128 letters and papers. They come within the same rule, and the item must be allowed.

No. 4. Per diem for 26 days at five dollars each. The district attorney has urged upon the court, under the instructions of the department of justice, this consideration. The attorney general, with the sanction of the president, limited the number of days of the service of supervisors to five. It is insisted that the chief supervisor comes within the category. This cannot be the correct conclusion. The chief supervisor is not a supervisor at all. He discharges none of the duties of a supervisor. He is a commissioner appointed over the supervisors, detailed on this duty. He must discharge duties anterior to any appointment of supervisors, and must continue to perform services in and about the appointment of them long after some have been appointed. Sections 2026–2028. The supervisors have but one duty, in and about the election itself, and during the days of balloting and canvassing the votes. The chief supervisor has other distinct duties, requiring more time, and involving greater responsibility. Section 2031 provides certain fees for the chief supervisor. Then it adds a provision for compensating supervisors of election, confining this, however, to only a certain class of these,—those appointed for towns or cities of 20,000 or more inhabitants. Clearly, only such persons are here alluded to as supervisors of election as are provided for in sections 2026–2028, under that name. As we have seen, the chief supervisor is a commissioner appointed because he is a commissioner. His compensation as chief supervisor is not exclusive of, but in excess of, and apart from, his fees as commissioner. Section 2031. Can it be that the government would require a commissioner to give of his time, and not compensate him? As he would be entitled as commissioner, when engaged in his official duties, for services analogous to these, to a per diem of five dollars, he is allowed the same here.

. Nos. 5 and 6. Filing 54 orders for appointment of supervisors and indexing the same; recording the same. These orders belong to the court, are of its records, must be filed in court, and not with the chief supervisor. But he should have among the records of his office the names of all supervisors whom he must overlook, who are subject to removal, and in whose list vacancies may arise. He should enter and index such lists among the records of his office; and for this he is allowed 15 cents per folio, by section 2031. Item 5 disallowed; item 6 allowed.

. No. 7. So with this item, filing, indexing, and recording appointments of 687 supervisors; there is allowed 15 cents per folio for entering and indexing these.

Nos. 8 and 9. Administering oaths to 24 supervisors for the United States marshal, certificates, seals, filing, indexing, and recording same. These were required of him as chief supervisor by the marshal, under instructions from the department of justice. The affidavits were

taken by him, and as to be chief supervisor he had to be a commissioner, *ex necessitate* he could administer an oath. Items allowed.

No. 10. Preparing and forwarding instructions to 687 supervisors. Under section 2026 he must prepare them. As commissioner for preparing papers he is allowed 15 cents per folio. For each copy out of his office, under section 828, he is entitled as commissioner to 10 cents per folio. This much is allowed.

No. 11. No provision is made for the ordinary stationery used by the chief supervisor, or by any commissioner. He is required, however, to furnish blanks, etc. For these *ex equo et bono* he must be paid. For pens, ink, note paper, etc., he cannot be paid. If the amount allowed by the department on this item—$35.25—covers these blanks, etc., the rest is disallowed. If not, so much as will cover them is allowed.

No. 12. Payment to H. P. Locke for 35 days, for services as assistant and messenger. No authority can be found for this, either in the law for chief supervisor or for commissioners. It has been argued that the circumstances of the destruction of the room of the chief supervisor, occupied by him as commissioner, by the recent earthquake, and the health of the chief supervisor, made the services of a clerk and messenger necessary, and that this charge comes within the implied contract to furnish everything necessary for the discharge of the duties of the office. I apprehend that at the farthest, those things are implied which necessarily were in contemplation of both parties at the time of the appointment. When one is appointed to discharge an office, he is expected to do its duties himself; and if his health fail, and he must employ assistance, he must pay for such assistance himself. There was no implied contract to pay for a messenger, and no authority for employing one. The item is disallowed.

Let a decree be taken in accordance with this opinion.