MEYERS (UNITED STATES v.). See Case No. 15,762.

## Case No. 9,520.

### MEZES v. GREER et al.

[1 McAll. 401.]

Circuit Court, D. California. July Term, 1858.

GRANTS—CONFLICTING CLAIMS—THIRD PARTIES—KIND OF RELIEF—LAND PATENTS—EJECTMENT.

1. Where parties set up conflicting claims to property, with which a special tribunal may deal, as between one of the parties and the government, regardless of the rights of third parties, the latter may come into the ordinary courts of justice and litigate their claims.

2. Such party can only litigate in the tribunal which can afford the relief asked. If his right be legal, he must seek it in a court of law; if an equity, in a court of chancery.

3. The proviso in the act of congress approved March 3, 1851 (9 Stat. 301), in relation to patents, does not destroy the distinction between equity and law which obtains in the federal courts.

4. The plaintiff holds a legal title. The title of defendants in this case, is inchoate, and not such as can be used in bar of an ejectment, where a legal title is counted on.

At law.

Johnson & Rose, for plaintiff.

Jeremiah Clarke and Crockett & Crittenden, for defendants.

McALLISTER, Circuit Judge. This is an action of ejectment, brought for the recovery of certain lands situated within this district. The plaintiff introduced and relied on a patent which had been issued to him from the government of the United States. The defendants then offered a Mexican grant, and a confirmation of the claim under it by the board of land commissioners created by the act of congress of March 3, 1851 (9 Stat. 631), with an affirmance by the district court of the United States for the Northern district of California, on appeal from the said decision of the land commissioners. The plaintiff presents a perfect, legal title. To that of the defendants we shall hereafter allude. There is no doubt that where parties set up conflicting claims to property, with which a special tribunal may deal, as between one of the parties and the government, regardless of the rights of third parties, the latter may come into the ordinary courts of justice for relief, and litigate their claims. Thus, a party may go into a court of equity, to set aside the decision of the register and receiver, confirmed by the com-

missioner, and which was obtained by fraud. Garland v. Wynn, 20 How. [61 U. S.] 6. But the party seeking relief can only obtain it in the tribunal which has the power to afford it. If his right be a legal one, he may vindicate it in a court of law; if equitable, he must enforce that equity in another forum. "An equitable claim," says Mr. Justice McLean, "however strong it may be, cannot be set up at law to defeat the legal title." Baird v. Wolfe [Case No. 760].

The provision in the act of congress of March 3, 1851, which enacts that the patent to be issued under it "shall not affect the interests of third parties," does not alter or change the jurisdiction of the courts of the United States, nor destroy the distinction which by their law separates legal from equitable rights; prescribing, as they do, as rules of action in administering the former, the principles of the common law, and in the administration of the latter, the rules and proceedings of chancery. Now, as. prior to that enactment, the party to vindicate a legal right must be in a court of law,—to enforce an equity he must be in a court of equity. In Willot v. Sandford, 19 How. [60 U. S.] 79, 82, it is said: "In the next place, the United States reserved the power to survey and grant claims to lands, &c. . . . nor have the courts of justice any authority to disregard surveys and patents, when dealing with them in actions of ejectment." It does not seem to be denied, that the foregoing principles must control the action of the court; but it is contended, that defendants have a perfect, legal title. Being in a court of law, if both parties had legal titles, the question would arise how far this court would follow some of the state courts who, in a court of law, in a conflict between two legal titles, permit the parties to go behind them into the prior equities. It is admitted that the Mexican grant offered in evidence had never received the approval of the departmental assembly of California; that no judicial possession of the land was ever given, and that no survey of the land, or severance of it from the public domain, by a functionary of Mexico, was made before the cession of California to the United States. It is contended, however, that the approval by the departmental assembly was unnecessary to make it a legal title; and the fact that there was no judicial possession given does not affect the title, because the boundaries of the land are given so precisely in the grant, there was no necessity for a survey and delivery of judicial possession. If the court could dispense with the action of one of the political departments of Mexico, in the exercise of the granting power, and consider the title as legal and complete, it is still strange that—if the boundaries are so precisely described as to dispense with any necessity for a survey—the surveyor to whom the duty was confided of making a survey correctly, has not only failed in finding the boundaries, but erred so egregiously as to cause great alleged injustice to the defendants.

The grounds relied on to establish a perfect legal title in the defendants are, first, the Mexican laws; second, the confirmation of the claim under the title derived from those laws, made by the district court; and third, the clause in the act of March 3, 1851, which declares the patent when issued shall not affect the rights of third parties.

As to the first ground, a Mexican title, precisely similar to the one under consideration, save there had been no confirmation of it, was fully considered by this court in the case of Tobin v. Walkinshaw [Case No. 14,068], at its September term, 1855; where it was decided that a Mexican grant which had not received the sanction of the departmental assembly, and where there had been no judicial possession given nor any severance of the land from the public domain prior to the cession of California to the United States, was not such legal title as would sustain an action of ejectment, and defeat a legal title. This court gave in that case the reasons, in detail, on which it rested its decision. Until the action of the appellate tribunal shall ascertain the error of this court in that case, the reasons which then governed must control in this. The court cannot, therefore, consider that defendants hold a perfect title under the Mexican laws.

The next inquiry is, if a legal title is not held under the Mexican laws, did the confirmation of the claim by the district court, under that title, give defendants a legal title? The court knows of only three modes by which a legal title to real estate can pass from the United States,—to wit, by patent; by legislative confirmation, followed by a survey in the terms prescribed by it; or by a legislative confirmation describing the boundaries of the land with such precision as, in the absence of anything to the contrary, raises the fair inference that all the land within the prescribed limits was intended to be granted, thus dispensing with the necessity of a survey by an officer of the United States. In each of these modes, the granting or political power is exerted. The court is aware of no case in which the decree of a judicial tribunal has operated per se as the conveyance of the legal title to real estate. In Hickey's Lessee v. Stewart, 3 How. [44 U. S.] 750, it was held, that the decree of a court of equity, declaring the complainant the equitable owner of land, and directing the defendant to convey it,—though in part executed by a writ of habere facias, putting the party in possession of part of the premises,—does not confer a legal title, and is not a bar to an action of ejectment. In that case the court say: "The defendant in ejectment can never defend his possession against the plaintiff upon a title in himself by which he could not recover the possession if he were out, and the plaintiff in, possession. Reversing the

position of the parties in this case, could the defendants, if plaintiffs recover the land in controversy upon this decree, and evidence of possession under it, prevail against the title of the plaintiff? We have no hesitation in saying they could not; and, therefore, the decree, if founded upon a valid, equitable title, would be no legal bar to the action of the plaintiffs."

In Baird v. Wolfe [supra], the plaintiff gave in evidence a patent. The land had been located by survey by one Baird, and sold to one Dunbar. The claim had been reported on favorably by the land-officer, whose report was made to congress, and by them examined and confirmed; and a certificate was issued, which authorized the person to whom it issued to locate the land within the time and place limited. It was contended that the act of congress, confirming the right to the tract of land to the original claimant upon the report of the register and receiver vested in the claimant the legal title. But the court say: "This was not the effect of the confirmation. It was the right to the four hundred acres of land which was confirmed, and not to any particular tract of land. The certificate which the claimant received as evidence of his right, authorized his location of the four hundred acres. A legislative act, confirming a title which was in its terms final, and required no further action of the government, would be considered a grant. But the right before us is not of this character." In that case congress itself had directly transferred the title to the right; but as something else was to be done for the segregation of the land, until that was accomplished the title was deemed inchoate.

In West v. Cochran, 17 How. [58 U. S.] 415, the court say: "It was competent for congress to take up these titles or rights, and act on them, either by legislating directly that each claimant should be confirmed, and have a perfect title to his actual possession," &c., "without ascertaining, in the act of confirmation, or by any special means provided therein, the bounds of claims confirmed. But it was also competent for congress to provide that before a title should be given to any possessor, the exact limits of his possession and the title which the United States was to give should be defined, and that this should be done by such agencies and in such manner as might be fixed by congress. This is in entire accordance with the provisions of the treaty, which guarantees to the inhabitants the rights of property secured to them; but it was not intended to provide for the particular modes and instrumentalities by which such rights should be ascertained and enforced; these being left to the nation, to whose powers they were confided; so that the question is, What has congress deemed expedient? Now, the policy which is so obvious, and which has been acted on by the United States ever since they began to exercise power over the public lands, namely to give defined limits to grants, may well be supposed to have actuated congress in 1807. The provisions of that act clearly show that although congress intended that the commissioners should adjudge the existence of good titles to lands held under French and Spanish possessors, yet they did not intend that a final legal title, as against the United States, should be made to vague grants, until their bounds had been ascertained by the means there designated, and the particular tract defined by survey."

Now, congress have by the act of March 3, 1851, designated the means by which to ascertain the limits of lands the claims to which had been confirmed, namely, by a survey made by the appropriate officer of the government, the evidence of which survey and the alienation of the title was the patent to be issued. It is evident that congress did not intend any more in this than in the case just cited,—to part with the legal title until the exact limits of the land had been defined by previous survey. When such patent shall have issued, the presumption would arise that the patent was valid, and it would be prima facie evidence that all incipient steps had been regularly taken before the title was perfected by the patent. Minter v. Crommelin, 18 How. [59 U. S.] 88. In Bagnell v. Broderick, 13 Pet. [38 U. S.] 450, the court say: "Congress has the sole power to declare the dignity and effect of titles emanating from the United States; and the whole legislation of the federal government, in reference to the public lands, declares the patent the superior and conclusive evidence of legal title; and until its issuance the fee is in the government, which by the patent passes to the grantee, and he is entitled to recover the possession in ejectment."

The conclusion to which the court has come is, that the title of the defendants in this case cannot be set up in this court against the legal title of the plaintiff. The same is therefore excluded as evidence in this cause.

[This case was taken upon error to the supreme court, which affirmed the judgment of the circuit court. Mr. Justice Grier delivering the opinion. 24 How. (65 U. S.) 268.]

M. F. WINCH, The. See Case No. 4.485.

MIAMI COUNTY (PECK v.). See Case No. 10,891.