## Case No. 14,479.

### UNITED STATES v. The AUSTIN.

[9 Ben. 350.] [1]

District Court, E. D. New York. Feb., 1878.

PRACTICE IN ADMIRALTY — APPLICATION TO SET ASIDE SALE—LACHES.

An application to set aside the sale of a vessel regularly made under a final decree in admiralty must be promptly made. Such application denied when three months had elapsed since the sale, and no excuse for its delay was offered, and the parties could not be put back into the same position as that occupied at the time of the sale.

In admiralty.

A. W. Tenney, for the United States.
J. J. Allen, for the Vessel.

## Case No. 14,480.

### UNITED STATES v. AUSTIN.

[2 Cliff. 325.] [2]

Circuit Court, D. Massachusetts. Oct. Term, 1864.

COLLECTOR OF PORT—EXTRA SERVICES—MAXIMUM COMPENSATION—PREPARING CERTIFICATES—SET-OFF.

1. By the act of the 2d of March, 1799 [1 Stat. 659], casks, chests, or cases of distilled spirits, wines, and teas, when imported, were required to be branded or otherwise marked by the surveyor or other officer acting as inspector of the revenue for the port where such merchandise was landed.

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

2. When thus branded, it was the duty of the surveyor or chief officer of inspection to give a certificate to the proprietor, importer, consignee, or agent, of the whole quantity of such spirits, etc., also the name of such proprietor, etc., the name of the vessel from which such importation was landed, and of the marks of each cask, etc.

3. The treasury circular of the 13th of July, 1795, allowed to the supervisors of the revenue, for preparing, stamping, and distributing among the inspectors, the sum of one cent for every certificate to accompany foreign and domestic distilled spirits, wines, or teas, which should be actually issued in the ports of their respective districts.

4. When the revenue act of March 2, 1799, was passed, it became necessary to issue a new circular upon the subject, because the whole duty of providing such blank certificates was therein imposed upon the supervisors of the several districts.

5. Such supervisors were, by the new circular, allowed one cent for every certificate prepared, stamped, and distributed, and the addition of one cent for numbering and signing every certificate which was actually issued in the ports comprehended within their respective districts.

6. By the act of the 6th of April, 1802 [2 Stat. 148], the duty of preparing and furnishing such certificates was transferred to collectors, and in the same act it was provided that they should receive the same compensation therefor as that before allowed to supervisors.

7. This duty is one directly connected with the office held by the collector, and he cannot be entitled to a greater amount from that source than the sum of $400, which is the maximum allowed by law to collectors for extra services having an affinity or connection with the duties of said office.

8. The act of the 12th of June, 1858 [11 Stat. 320], directed that collectors of customs should act as disbursing agents of money appropriated for the erection of marine hospitals, and with such compensation, not exceeding one fourth of one per cent, as the secretary of the treasury should deem equitable; but any sums charged by a collector on money disbursed for such purpose before the passage of the act, falls within the prohibition of the act of the 23d of August, 1842 [5 Stat. 510], and must be rejected.

9. Sums charged by a collector as commissions on sums disbursed for the erection of a marine hospital, under the act of the 12th of June, 1858, cannot, when they have not been disallowed by the accounting officers of the treasury, be allowed in set-off against the suit by the United States against such collector for sums alleged to be due from him

10. In case of extra services performed by a collector under the directions of the department, beyond the limits of his district, and which have in character no affinity or connection with the duties of his office he may be allowed compensation therefor, although it exceeds the maximum for extra services of the opposite nature.

Assumpsit to recover of [Arthur W. Austin] the defendant $13,996.66, alleged to be due from him as collector of the port of Boston and Charlestown, on the settlement of his accounts with the treasury department. The defendant pleaded the general issue, and claimed a set-off. The principal dispute arose upon the several sums pleaded in set-off, which defendant contended should be deducted from the amount demanded by the plaintiffs The allowance first claimed in set-off was the sum of $464.78, alleged to be due as compensation for signing spirit certificates under the several acts of congress upon

that subject; the second was for commissions on disbursements made by the defendant as collector, in the construction of the marine hospital at Chelsea, in this district, which amounted, deducting the sum allowed by the accounting officers of the treasury, to $812.50; the third was for commissions on moneys disbursed by the defendant as collector for the light-house establishment in districts other than the one for which he was appointed. The case came up on an agreed statement of facts. For the purposes of this suit the defendant admitted the receipt of $6,400 for every year while he was collector, and at that rate for every fraction of a year during his term of service, which was from April 1, 1857, to March 1, 1860. If the court should be of opinion that all the charges made by the defendant should be disallowed, a verdict was to be taken for the plaintiffs for the whole amount claimed, with such interest if any, as the court might think proper to allow. If the court should be of opinion that any or all of the charges should be allowed, a verdict was to be taken for the plaintiff for the amount found to be due, according to the principles established by the court.

R. H. Dana, Jr., U. S. Dist. Atty., and T. K. Lothrop, Asst. U. S. Atty.

The act of April, 1802, may be considered as having transferred to collectors the duties of the supervisors of the revenue, so far as concerned the signing of spirit certificates; and these duties may be comprehended under the language of the act of May 7, 1822 [3 Stat. 693], as services performed in another office or capacity, for which the collectors may be entitled to not more than $400 annually. This seems to have been the construction of this statute by the treasury department at the time of its passage. The facts agreed in this case find that the defendant has received in each year, during the whole term of his office, the full sum of $6,400, which sum is the amount of the maximum compensation allowed him as collector by the act of March 3, 1841 [5 Stat. 419], $6,000, and of the extra allowance permitted by the act of May, 1822, $400. There is no ground for claiming that the defendant is entitled to an allowance for these certificates over and above these two sums. The case at bar, so far as the defendant's claim for signing spirit certificates is concerned, is briefly thus: The duties performed by the defendant were a part of, or incident to, his official duties as collector; the law has provided a maximum compensation for such services, and the defendant has already received this compensation in full. He cannot, therefore, claim any additional payment on this account. The defendant's claim for commissions on his disbursements for the construction of the marine hospital is precisely one of those which, by the very words of the act, cannot be allowed. It is a claim for

compensation for the disbursement of public money. It is not authorized by law. There is no appropriation therefor. The appropriation for the construction of the hospital does not explicitly set forth that it is for such compensation. On the contrary, it makes no provision explicitly, or even by the remotest implication, for such compensation. The act of 1855, providing for the building of the hospital, was the only statute on this subject-matter, and the only act really bearing on this question, except that of August, 1842. The fact that there was no appropriation to pay a commission on these disbursements distinguishes the case from that of Converse v. U. S., 21 How. [62 U. S.] 463, for in that case there was a specific appropriation to pay the commission claimed by Converse's intestate, and the case was decided upon the ground that it came within the very terms of the statute of August, 1842, and was a compensation authorized by law, and the appropriation for which "explicitly set forth that it was for such compensation." [Converse v. U. S.] 21 How. [62 U. S.] 474.

The remainder of the defendant's claim to a set-off is confined to his claim for a commission of two and a half per cent on all disbursements made by him on account of the light-house establishment for purposes outside of, and disconnected with, the district of which he was collector. This claim may be divided into three classes: 1st. The amount of $564.43, not included in the defendant's accounts rendered to the treasury department at any time during his continuance in office, or after his retirement therefrom in March, 1860, and up to the time of the bringing of this suit, the 14th of January, 1862. This amount, not having been submitted by the defendant to the accounting officers of the treasury, and by them disallowed, cannot be the subject of a set-off. Act March 3, 1797, c. 20, §§ 14, 15 (1 Stat. 415). 2d. The defendant's claim for commissions on the amount expended by him for this purpose, during the fiscal year from June 30, 1858, to June 30, 1859, must be disallowed. The ground on which a similar claim for commissions on similar disbursements was sustained by the supreme court in Converse v. U. S., ut supra, was that the claim was for a compensation authorized by law, and the appropriation explicitly set forth that it was for such compensation. Both these elements must combine to make a valid claim against the government. The act of June 12, 1858 (11 Stat. 320), which contains all the appropriations for light-house disbursements for that year, makes no provision for the payment of commissions on the disbursements; and as there was no appropriation made for the payment of any commission on the disbursements for this purpose for the fiscal year from July 1, 1858, to July 1, 1859, the defendant's claim to set-off must be diminished by the amount charged for these commissions. It is claimed that these commissions charged for this fiscal

year may be paid from the unexpended surplus of the appropriations. But the statement of facts shows no surplus. The defendant's remaining claim for commissions on other disbursements for light-house purposes, outside of his own district, should not be allowed. The case is to be distinguished from that of Converse v. U. S. In that case the plaintiff in error, as administrator of Philip Greely, collector of the port of Boston, claimed an allowance as commissions due him from the United States upon "contracts, purchases, and disbursements made by him for oil and other articles for the light-house service of the United States, under the direction of the secretary of the treasury." None of the like services for which the supreme court decided that Mr. Greely was entitled to compensation were performed by the defendant. He made no contracts, prepared and published no proposals, took charge of none of the purchased property or materials for safe-keeping or distribution. He did nothing involving time, labor, or responsibility. The only service performed by him was paying bills, duly certified to him, out of the moneys in his hands. In order to bring any case within the reason of the decision of the supreme court in the case of Converse v. U. S., three requisites are necessary: 1. The services specified must have been actually performed by the party claiming remuneration. 2. The compensation must be fixed by law. 3. There must be a law making an appropriation, and explicitly setting forth that it is for such additional pay, extra allowance, or compensation. The like services, for which it was decided that Greely was entitled to remuneration, were not performed by the defendant, and there is not a law setting forth, explicitly, any appropriation for the compensation claimed.

Mr. Austin, pro se.

On the subject of disallowances it may be remarked that, agreeably to the spirit of the former decisions of the supreme court of the United States, what is not allowed by the department must be considered disallowed. Defendant claims that, agreeably to the decision in U. S. v. Converse, 21 How. [62 U. S.] 464, he has fulfilled all the requisitions entitling him to the commissions on light-house disbursements. "The services were foreign to his official duties, and beyond the limits of the district to which the law confined his official duties." "The commissions are to be paid on the whole amount, without any reference to the person or office who performs the service." Congress has never acted upon the principle that the head of a department should exercise unlimited power over his appointees or subordinate officers, and require of them services without compensation, not within the legal contemplation of their duties. Here are services rendered outside of the collection district, and it would be conferring upon a sec-

retary of the treasury or a postmaster-general arbitrary powers, if they could require of their respective appointees, without compensation, duties or services, having no reference to their offices, which would make the appointment originally conferred upon them a burden. All the appropriation acts after the establishment of the light-house board recognize the same disbursing agents as before, and not only that, but practically they were always appointed by the secretary of the treasury after, in the same manner they were before, the existence of the light-house board. The money has been disbursed during the three years of Mr. Austin's collectorship by Mr. Austin, by the same disbursing agent, appointed in the same way and by the same authority as before the creation of the light-house board. That the duties of the disbursing agent were not dependent upon and not qualified by the light-house board act. It must be conceded that the two and a half per cent. commissions appropriated since the creation of the light-house board were intended for some one; from 1852 to 1861 they amount to over $63,000, and over $26,000 during the time Mr. Austin was collector. For whose use was this large sum appropriated, if not for the persons who performed the service? As collectors were absolutely restricted from receiving anything beyond a small fixed sum in their own districts, of course the large appropriation was intended to supply a sum to compensate for services as disbursing agents out of their own districts, else there was no necessity for any such appropriation. The claim of two and one half per cent. commissions for disbursements on construction of marine hospital depends very much on the same principles as that for disbursements outside of the light-house. The claim is for two and one half per cent commissions, to May 31, 1858. The claim after that period, by the statute of June 12, 1858, is limited to one fourth of one per cent. I cite that statute for a double purpose, to examine its bearing on this as well as on the question of disbursements for light-house purposes outside of the district. The statute is as follows: "And be it further enacted, that the collectors of the customs in the several collection districts be, and they are hereby and hereafter required to act as disbursing agents for the payment of all moneys that are or may hereafter be appropriated for the construction of customhouses, court-houses, post-offices, and marine hospitals, with such compensation, not exceeding one quarter of one per cent, as the secretary of the treasury may deem equitable and just." 11 Stat. p. 327, c. 154. § 17. The collector is undoubtedly entitled to two and a half per cent commissions up to May 31. 1858. agreeably to the decision in U. S. v. Converse. unless the court should think the appropriation was not direct enough. The act for the construction of the marine hospital appropriates a sum sufficiently large to build it, but makes no specific appropriations for the benefit of those who perform the necessary incidental services. I refer to chapter 175, p. 669, 2d Sess. 1855 [10 Stat.]. Sections 5 and 6, in relation to building marine hospital. An appropriation is made to cover the whole expense, but no special specification, two and a half per cent being the usual amount allowed by the government, unless controlled by special legislation, like the act of June 12, 1858, before quoted. The charge of two and a half per cent was commonly made by collectors up to that time; the duties were onerous and entirely outside of the duties required of the collector by law. Another question is also presented, whether the secretary having continued to employ the collector after June 12, 1858, the provision of one quarter of one per cent does not relate back (by the terms of the act) to the former service, if the collector is not entitled to the two and a half per cent up to that time. Still another consideration is presented: This act of June 12, 1858, was passed, and undoubtedly framed at the treasury department while the Converse Case was under discussion, but not a word therein curtailing commissions of light-house disbursing agents; from which it may justly be inferred that the whole question arising on that point was to be left to the decision of the court in the Converse Case.

Signing Spirit Certificates. This charge has always been allowed. This charge, as appears by the statement of facts, was presented, and the transcripts do not show its allowance; it is, therefore, to be considered disallowed. The authority for the allowance is the act of 1802, §§ 7 and 8, which are as follows: Section 7. Authorizes the secretary to designate collectors to sign certificates. Section 8. That for preparing and issuing the certificates, the collectors performing that duty shall be entitled to, and receive, the same compensation as has heretofore been allowed to the supervisors respectively. This duty was transferred to collectors by circular of June 29, 1802. This claim is not only supported by an unvaried admission of it at the department, but all the requisitions in the Converse Case are fulfilled. The duty to be performed has no affinity with the collector's duty; he is directed to perform it, and provision is made for his payment by a specified sum. See 1 Mayo, U. S. Fiscal Dept. 80. The compensation is modified in consequence of increasing duties in numbering and signing the certificates, raising the compensation to two cents for each certificate.

CLIFFORD, Circuit Justice. The maximum compensation of the collector of this port as such is $6,000 as was decided by the unanimous judgment of the supreme court. U. S. v. Walker, 22 How. [63 U. S.] 299 (5

Stat. 432). The eighteenth section, however, of the act of congress of the 7th of May, 1822, provides that no collector, etc., shall ever receive more than $4,000 annually, exclusive of his compensation as collector, and the fines and forfeitures allowed by law, for any service he may perform for the United States in any other office or capacity. 3 Stat. 696. Collectors, at the time this law was passed, were required, in certain contingencies, solely to execute all the duties in which, otherwise, the co-operation of the naval officer was requisite, and in case of the disability or death of the naval officer, they were also required to act solely until a new appointment was made. 1 Stat. 643. The settled practice of the department also was to require them, without any special law upon the subject, to superintend the light-houses in their respective districts, and to disburse money for marine hospitals and the revenue-cutter service. Such services were uniformly charged as extra services, and as such were allowed by the department. The attention of congress was eventually attracted to the subject, and the result was that the act of the 7th of May, 1822, was passed. The supreme court held that by the true construction of that provision it does not forbid compensation for extra services, which have no affinity or connection with the duties of the office held by the collector. On the contrary, the court held that the provision recognizes such a right, and gives to the collector an additional sum, over and above his salary as an officer, for extra services rendered as agent, which had no legal connection with his office. Converse v. U. S., 21 How. [62 U. S.] 468. The practice of the department has also uniformly conformed to this rule, as appears by the record in this case. The agreed statement shows that the defendant was appointed, on April 1, 1857, and continued to perform the duties of the office until March 1, 1861; and it also appears that throughout that period he has been allowed and paid $400 per annum for extra services, in addition to the maximum compensation allowed to the office. The remark, however, should be made that the services for which a compensation has been received are altogether separate and distinct from those charged in set-off, and which are now the subject of dispute. Allusion is made to the subject, not as calling in question the propriety of the allowance, but as showing the settled construction of the provision under which the services were allowed and paid.

The most important objection made to the several claims of the defendant, as exhibited in his set-off, is that every such allowance to a collector for extra services beyond the sum of $400 is prohibited by law, and as that proposition, if sustained, is a complete answer to the entire claim of set-off, it will be first considered.

Support to the proposition is chiefly derived from, or attempted to be derived from, the second section of the act of August 23, 1842, and kindred provisions to be found in subsequent acts of congress. 5 Stat. 510. The prohibition as contained in that provision is that "no officer in any branch of the public service, or any other person whose salary, pay, or emoluments is or are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation in any form whatever for the disbursement of public money, or for any other service or duty whatsoever, unless the same shall be authorized by law, and the appropriation therefor explicitly sets forth that it is for such additional pay, extra allowance, or compensation." The important words of the section, as contradistinguished from prior provisions upon the same subject, are those which follow the word "therefor," near the close of the provision. The question as to the true construction of the provision came directly before the supreme court in the case of Converse v. U. S. 21 How. [62 U. S.] 471, and the court expressly held that those words only show that the legislature contemplated duties imposed by superior authority upon an officer, as a part of his duty, and which the superior authority had, in the emergency, a right to impose, and the officer was bound to obey, although the duties were extra and additional to what had previously been required. "But," say the court, "those words can by no fair interpretation be held to embrace an employment which has no affinity or connection, either in its character or by law or usage, with the line of his official duty; and where the service to be performed is of a different character and for a different place, and the amount of the compensation is regulated by law." Circumstances, such as are recited in the opinion of the court, must be regarded as constituting a case to which the provision under consideration does not apply, else the greatest injustice would be done in numerous cases which may be supposed, and which are likely, to arise in the ordinary course of public affairs. Were the rule in such cases otherwise, then, indeed, it would be true that an officer of the United States whose salary or compensation does not exceed $10 per quarter, if employed to proceed to the coast of the Pacific, and there to examine the accounts of all the principal officers of the government in those distant states, would be entitled to no compensation whatever for his services, although an act of congress directed the proper department to cause the investigation to be made, and fixed the compensation and actually appropriated the money to pay for such a service. Foreseeing that such consequence might follow, the supreme court wisely rejected the construction assumed in the proposition of the plaintiffs, and adopted the more liberal one to which reference has been made. The reasons for the construction adopted are given at great length in

the opinion, and need not be further considered, except to say that, in the course of the opinion, all the acts of congress upon the subject were carefully reviewed. The conclusion of the court was, that the just and fair inference, from all the provisions, is, that no discretion is left to the head of a department to allow an officer who has a fixed compensation any remuneration beyond his salary, "unless the service he has performed is required by existing laws; and the compensation therefor is fixed by law, nor even then if the service performed had any affinity or connection with the duties of the office which he held." But the converse of the proposition was also held to be true, that where the service performed was foreign to the duties of the office which he held, and was directed by the proper department in pursuance of the requirements of law, and the compensation was fixed by law and actually appropriated, the officer performing the service was entitled to the compensation. Applying that rule to the present case, it is quite obvious what the result must be in respect to each of the three claims presented by the defendant. He does not deny the receipt of the amount claimed by the plaintiffs, but contends that the same should be diminished by the set-off filed by him as before explained.

Distilled spirits, wines, and teas when imported were required by the act of March 2, 1799, to be landed under the inspection of the surveyor or other officer acting as inspector of the revenue for the port, and the officers of inspection were required to brand or otherwise mark the several casks, chests, vessels, and cases containing the importation. When so landed and marked or branded, it was made the duty of the surveyor or chief officer of inspection to give a certificate to the proprietor, importer, consignee, or agent, of the whole quantity of such spirits, wines, or teas, specifying also the name of such proprietor, importer, consignee, or agent, and of the vessel from on board which the importation was landed, and of the marks of each cask, chest, vessel, or case. 1 Stat. 659. The treasury circular of July 30, 1795, allowed to the supervisors of the revenue for preparing, stamping, and distributing among the inspectors, the sum of one cent for every certificate to accompany foreign and domestic distilled spirits, wines, or teas, which should be actually issued in the surveys and ports of their respective districts. Inspectors of surveys and supervisors of the revenue, when acting as such inspectors, were allowed the sum of two cents and one half for every certificate to accompany domestic distilled spirits, signed by them, and one cent for every such certificate to accompany foreign distilled spirits, signed by them, and issued in the survey under their inspection, or in the ports within the same. When the revenue act of March 2, 1799, was passed, it became necessary to issue a new circular upon that subject, because the forty-second section of the act devolved the whole duty of providing such blank certificates, under such checks and devices as should be prescribed by the proper officers of the treasury, upon the supervisors of the several districts. 1 Stat. 660. The comptroller of the treasury accordingly, on the 28th of October, 1799, issued a new circular, in which he informed the collectors that the duty of numbering and signing all certificates to accompany foreign distilled spirits, wines, and teas had been devolved upon the supervisors of the revenue. They were allowed by that circular, for preparing, stamping, and distributing among the inspectors of the revenue, the sum of one cent for every such certificate, and the additional sum of one cent for numbering and signing every such certificate, which should be actually issued in the ports comprehended within their respective districts. The duty of preparing and furnishing such certificates was, by the seventh section of the act of April 6, 1802, transferred to collectors; and by the eighth section of the act, it is provided that they shall receive the same compensation as heretofore has been allowed to the supervisors. 2 Stat. 150. Accordingly the secretary of the treasury, Mr. Gallatin, on June 11 of the same year, issued a circular designating the collector of the customs for this port as the proper officer, under that authority, to furnish such certificates. Granting that the duty is an extra one, still it is a duty directly connected with the office held by the collector, and in no view of the case can the defendant be entitled to any greater amount from that source of income than the sum of $400 which he has already received.

An examination will next be made of the claim of the defendant for two and a half per cent commissions on all sums disbursed by him in the construction of the marine hospital at Chelsea, in this commonwealth. The authority was conferred upon the secretary of the treasury by the fifth section of the act of March 3, 1855, to erect such marine hospital, for the construction of which the disbursements in this case were made. The sale of the land and buildings previously occupied as a marine hospital was authorized to be made, and a sum of money was appropriated for the construction of the new hospital, equal to the proceeds of such sale; but the act of congress contains no provision fixing the compensation of any disbursing agent, and makes no appropriation for any such purpose. 10 Stat. 669. The subsequent act of June 12, 1858, directs in substance and effect that the collectors of the customs shall act as the disbursing agents of money appropriated for the construction of marine hospitals, and with such compensation, not exceeding one fourth of one per cent, as the secretary of the treasury shall deem equitable and just. 11 Stat. 327. The record shows that $812.55 of the claim of the defendant accrued before the passage of the last-named

act, authorizing the secretary of the treasury to allow such a compensation. Obviously, all that portion of the claim must be rejected as falling directly within the prohibition of the act of August 23, 1842, as expounded by the supreme court. Converse v. U. S., 21 How. [62 U. S.] 473. The defendant is clearly entitled to such compensation as the act of June 12, 1858, allows to collectors, as disbursing agents of money for the construction of marine hospitals, but nothing can be allowed in this suit on that account, because the sum claimed has never been disallowed by the accounting officers of the treasury. 1 Stat. 575. The result is that no part of this claim can be allowed as a set-off against the demand of the plaintiffs.

Disbursements were also made by the defendant while he held the office of collector, for the light-house establishment, and for purposes outside of the district to which he was appointed, and having no affinity or connection with the duties of the office which he held. The sum thus claimed is $9,279, but the agreed statement shows that $564.43 of that sum had not been presented to the treasury department when the suit was brought, and there is no evidence that it has ever been disallowed. The allowance of that sum cannot be made, as there is no evidence to bring the case within any of the exceptions in the act of congress. 1 Stat. 515.

The residue of the claim, amounting to the sum of $8,714.57, was duly presented to the department and was disallowed, as appears by the agreed statement. The services are admitted, and the case, as stated by the parties, falls directly within the rule established by the decision of the supreme court. Converse v. U. S., 21 How. [62 U. S.] 473. The attempt is made to distinguish the case from the operation of the rule there laid down, chiefly upon two grounds. The suggestion in the first place is made that, some parts of the services performed by the collector in that case were not performed by the defendant; but the agreed statement shows, as the bill of exceptions showed in the case decided in the supreme court, that the sum claimed is two and a half per cent commission upon the disbursement made by the defendant within the period mentioned for light-house purposes, outside of his collection duties, and no evidence is introduced or offered to show that the commission charged is not the proper one, if the defendant is entitled to anything. The respective claims of the defendant resisted at the department and finally disallowed, upon the ground that he was entitled to nothing; and such is the theory of the plaintiffs here, as is obvious from a careful reading of the agreed statement. The remaining suggestion is that no appropriation was made for any such purpose during the fiscal year ending the 30th of June, 1859, and consequently that no allowance can be made for the fiscal year preceding; but the answer of the defendant to this suggestion is decisive. The unexpended balances of appropriations of a preceding year may always be applied to the purpose for which they were made in a succeeding year, and undoubtedly it was on account of the excess of the appropriations that the suggested omission occurred. A sufficient amount always stood credited on the books of the treasury, and available as a fund for that purpose, to pay the just claims of the defendant.

Judgment for plaintiffs. The amount to be computed in conformity to the opinion of the court.