## Case No. 14,927.

### UNITED STATES v. DAVIS et al.

[1 Deady, 294.] [1]

Circuit Court, D. Oregon.   Oct. 1, 1867.

POSTMASTER—ACTION UPON BOND—COUNTERCLAIM —EXTRA ALLOWANCE—PLEA.

1. In an action by the United States on a postmaster's bond, the defendant may plead a counter claim, if it appear from such plea that the items thereof have been duly presented to the proper department for allowance, and rejected.

2. The act of June 22, 1854 (10 Stat. 293, 299), authorizes the postmaster general in his discretion to make an extra allowance to postmasters for extra labor and expense in certain cases: *Held*, that no postmaster has a right to such allowance until it is made him by the postmaster general—and that the action of the latter in the premises is final, and not subject to judicial review.

3. A plea of counter claim for certain extra services and expenses incurred by a postmaster under the act aforesaid, or the one of July 1, 1864 (13 Stat. 335), should show that the office kept by the defendant was within the act authorizing an allowance on such accounts.

4. The provision of the act of July 1, 1864 (13 Stat. 335, § 5), which enacts, that "the postmaster general, shall allow to· the postmaster, a just and reasonable sum for the necessary cost in whole or in part of rent, fuel," etc., is in effect, permissive and not mandatory, and no postmaster has any legal right to such allowance until it is awarded him by the postmaster general.

This action was brought by the United States against the defendant Herman W. Davis, and his sureties—Robert Pentland and James B. Stephens—in his official bond as deputy post-master at the city of Portland, to recover certain moneys alleged to have been received and wrongfully detained by said Davis, while acting as such postmaster.

A. C. Gibbs, for plaintiff.

W. T. Trimble, for defendants.

DEADY, District Judge.   The complaint alleges the making of the bond, and that between November 1, 1861, and November 4, 1865, Davis received as postmaster, the sum

1 [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]

of $9,032.40, and accounted for $6,006.56 of the same, leaving a balance due the United States of $3,025.84, for which it prays judgment against the defendants.

The answer of the defendants substantially admits the statement of the account as set forth in the complaint, and sets up a counter claim amounting in the aggregate to $4,582.50.   The first item in this counter claim is $307, for postoffice stamps delivered to the successor of Davis.   The rest of the items are for office rent, clerk hire, gas, fuel and stationery.   The plaintiff demurs to the counter claim except the first item.   This raises the question as to whether the defendant, Davis, was by law entitled to these allowances for these purposes.   The answer avers that the items of the counter claim have been duly presented to the proper department for allowance and rejected.   This being the case, if Davis was entitled as a matter of right to incur these expenses and pay them out of the proceeds of the office, he is entitled to have them allowed in this action, notwithstanding the decision of the department.

On the argument of the demurrer, the following acts of congress have been cited by counsel for plaintiff, regulating the compensation and allowances of deputy postmasters, during the period Davis was in office. No other has been cited by counsel for the defendants, and I take it for granted, without further examination, that these are all that exist, touching this subject. Act June 22, 1854 (10 Stat. 293, 299); Act March 3, 1863, §§ 5, 6 (10 Stat. 702); Act July 1, 1864 (13 Stat. 335); and Act March 3, 1865, § 3 (13 Stat. 505).

The act of 1854, regulated the compensation and allowances of Davis, until the act of July 1, 1864, went into effect.   This act gave deputy postmasters a certain commission "on the postage collected at their respective offices in each quarter of the year." This act also authorizes the postmaster general to make certain allowances to postmasters at distributing and separating offices, for extra labor and necessary expenses incurred by them in the discharge of these special duties of distributing and separating the mails.   But the statute is not imperative and gives the postmaster general authority to make this allowance when in his judgment it is proper to do so.   The statute commits the matter to the discretion of the postmaster general, and the subordinate cannot claim the allowance as a matter of right.   In this case it appears from the answer, that the postmaster general has exercised his authority—his discretion—and refused to make the allowance.   When the defendant, Davis, entered upon the office at Portland, he virtually agreed to perform the duties of the position for the commission allowed by law, and such further allowances for extra labor and expenses as the postmaster general in his discretion might deem

proper to allow him. It seems the postmaster general has not seen proper to make him any allowance. So far as this statute is concerned, this is the end of the case. The extra allowance was to depend upon the award of the postmaster general, and not of a court or jury. The defendant never could have any legal right to an allowance, until it was given him by the judgment of his superior officer, and that officer having directly refused to make the allowance, I cannot see on what ground this counter claim can be sustained.

But this is not all. It does not appear from the answer that the office at Portland is or was, either a distributing or separating office. Even if the statute was absolute and gave these allowances as a matter of right, still the answer must show that the defendant was within its provisions — in other words that the office at Portland was a distributing or separating office. As a matter of fact, it is not pretended that the defendant's office was a distributing office, while I suppose it was a separating office. Now the allowance which the postmaster general may make to a separating office, is a sum sufficient to compensate for "the extra labor necessary to a prompt and efficient performance of the duties of separating and dispatching the mails passing through his office." The allowance is for the extra labor in separating and handling the mail bags and dispatching them to the various offices to which they are directed from the distributing office. Nothing is to be allowed by this act to a separating office for gas, fuel, stationery or office rent.

I find nothing in the act of March 3, 1863, which sustains the counter claim of the defendants. Section 5 requires the postmaster general to make an allowance for clerical service, when "by reason of the presence of a military or naval force near any postoffice, unusual business accrues thereat." The answer does not bring the case of the defendants within this provision. Section 6 provides that "no postmaster shall hereafter, under any pretence whatever, have, or receive, or retain for himself, in the aggregate, more than the amount of his salary." Whether this provision applies to such postmasters, commonly called deputy postmasters, as received a commission upon postage, rather than a fixed salary, I am not prepared to say. But it matters not so far as this case is concerned.

By the act of July 1, 1864, the compensation of postmasters was changed. They were divided into five classes, and to receive salaries in proportion to the compensation received during the two prior years. Sections 5 and 6 of this act relate to allowances for expenses. The first of these two sections provides, "That at the postoffice of New York, and at offices of the first and second classes, the postmaster-general shall allow to the postmaster a just and reasonable sum for the necessary cost, in whole or in part, of rent, fuel, lights and clerks, to be adjusted upon a satisfactory exhibit of the facts. And at offices of the third, fourth, and fifth classes, such expenses shall be paid by the postmaster, except as in the sixth section provided." Section 6 authorizes the postmaster-general to designate distributing and separating offices at the intersection of mail routes, "and where any such office is of the third, fourth or fifth class of postoffices, he may make a reasonable allowance to such postmaster for the necessary cost, in whole or in part, of clerical services arising from such duties."

To bring this case within either of these sections, I think the answer should contain averments, either that the office kept by Davis was of the first or second class, or had been designated as a distributing or separating office. The court cannot presume that the office at Portland came within either of these categories—it must be averred.

But as this is a question of pleading rather than right, and may be avoided by amendment, if the facts will warrant, I will assume that the office at Portland, since July 1, 1864, was of the first or second class, or that it had been designated as a separating office. It is admitted, I believe, by counsel, that it was never a distributing office. The first assumption would bring the case within the provision of section 5. The language of this section is peculiar—"the postmaster-general shall allow," etc. It might be said, that even where the language of the statute was imperative, and absolutely required the postmaster-general in a given case or contingency, to allow a postmaster certain expenses; yet, still, until the allowance was made, the postmaster would have no legal right to the sum expended, which he could assert in a court in an action against him by the United States. Many reasons of public policy and convenience might be adduced in support of this construction of the statute. But notwithstanding these considerations, I think the contrary conclusion would be more consonant with justice and correct legal principles. When the statute peremptorily requires that the allowance be made, the officer makes the expenditure on the faith of the government, pledged as it were by the words of the statute, and in such case, it seems to me the safer course to hold that such an expenditure constitutes a legal claim against the United States.

But this imperative language "shall allow," is, I think, qualified by what follows—"in whole or in part":—to "require" the postmaster-general to allow an expenditure "in whole or in part," is, in effect, equivalent to authorizing him to allow it or not in his discretion. The amendment to this section contained in section 3 of the act of March 3, 1863, uses the phrase, "authorized to allow, at his discretion." Taken in connection with what appears to have been the uniform policy of

congress in regard to the extra allowances to postmasters, namely, to enable the postmaster-general to allow but not to enable the postmaster to demand as a legal right, I am satisfied the language of section 5 ought to be construed as permissive and not mandatory to the postmaster-general. As to section 6, the language is only permissive; "he may make a reasonable allowance."

Section 3 of the act of March 3, 1865, is amendatory of section 5 of the act of July 1, 1864. It enlarges the items of expenditure for which allowances may be made to postmasters, and includes offices of the third and fourth class as well as the first and third, but leaves it in the discretion of the postmaster-general whether any allowance shall be made or not.

This disposes of the counter-claim of the defendant, so far as demurred to. The demurrer is sustained.