## UNITED STATES *v.* WICKERSHAM.

(*Circuit Court, W. D. Tennessee.* February 24, 1882.)

1. RECEIVER—PROPERTY IN POSSESSION OF THE UNITED STATES—DEFENDANT'S CLAIM WHEN UNITED STATES IS PLAINTIFF—JURISDICTION.

   Where the United States filed a bill in the circuit court to forfeit a lease of lands belonging to them, and for a receiver, and by consent of parties the United States was placed in possession of the property under a decree containing certain stipulations as to the rights of the parties in the improvements and the rents to be collected by the United States, *held*, that the jurisdiction of the court over the property was ousted by the surrender of possession to the United States, and the court could, after that surrender, neither appoint a receiver on application of defendant, nor enforce against the United States any claim arising from the stipulations of the decree. And it is the duty of the court to decline jurisdiction on its own motion.

2. SAME—JURISDICTION—LIABILITY OF UNITED STATES—WRONGFUL ACTS OF AGENTS.

   The United States is not liable to a defendant in the circuit court for the wrongful conduct of its agents in the management of the property in controversy, there being no jurisdiction to grant relief.

3. SAME—ESTOPPEL—CONDUCT OF THE AGENTS AND ATTORNEYS OF THE UNITED STATES.

   The fact that the agent of the treasury department and the United States district attorney treated the suit as if the court still had jurisdiction over the property, and it were in the hands of a receiver, and that orders by the court pertaining to his accounts were entered, does not estop the United States or give the court jurisdiction.

4. SAME—REMEDY OF DEFENDANT.

   The defendant may have a remedy by application to the court of claims, or to congress, or to the executive department in charge of the property, to grant whatever relief he is entitled to in the premises, but not by any motion or other aggressive proceedings for affirmative relief in the suit originally brought by the United States to enforce their claims against him.

In Equity.

The United States being the owner of a lot in the city of Memphis, leased it to the defendant for a term of five years at an annual rent of $2,100. The defendant erected thereon certain brick buildings, which remain on the land, and one of the covenants of the lease permitted them to be removed at the termination of the lease. The defendant being in default in the payment of rent, the United States on June 4, 1869, before the termination of the lease, brought an action of ejectment in this court for the premises, and on the same day filed the bill in this cause to sequester the rents, to enjoin the defendant from collecting them, for the appointment of a receiver, and for general relief. On May 5, 1873, the United States recovered judgment in the ejectment suit, "subject to defendant's right to remove the

buildings from the same * * * before the next November term of this court." On this judgment a writ of possession issued March 1, 1876, which the marshal returned "executed by putting W. J. Smith, surveyor of customs, in possession as agent of the United States." The United States also, on said fourth day of June, brought an action for the past-due rents, and on April 15, 1871, recovered judgment for the sum of $608.20.

In the equity case a receiver was appointed, and on interlocutory decree it was determined that the United States were not entitled to recover the contract rent, but only for use and occupation $800 per annum. The defendant himself was at first appointed receiver, but, failing to report, was soon removed and one Griffin appointed, who collected and distributed the rents according to the orders of the court. On April 15, 1871, a decree was entered declaring the lease forfeited, the ground to belong to the United States, and the buildings to the defendant. By this decree J. E. Bigelow was appointed receiver, and ordered to collect the rents and pay to the United States $800 per annum, ground rent, which he proceeded to do until March 1, 1876, when there was due from the receiver to the United States the sum of $1,500 for arrears of ground rent, and on that day the following decree was entered in this cause:

"It having been established by a former decree of this court that the buildings and improvements upon the property in question in this cause are the property of the defendant, and it appearing to the court, by agreement of the parties, that there is ground rent due from the defendant to the United States, accruing since the present receiver was appointed in this cause, owing to the great decline in rents, and for the purpose of settling and paying off said past-due rent, it is, by agreement of the parties, ordered, adjudged, and decreed by the court that the said property be turned over to the United States, that the United States rent out said property, collect the rents, and apply them to the payment of said past-due rents until the same is fully satisfied, and then if the question of amount of ground rent can be agreed upon between the parties, then the said property shall be placed back into the hands of the defendant or his solicitor, J. E. Bigelow, to be held upon the terms to be agreed upon; but should the parties fail to agree about the ground rent, then the said defendant or his solicitor, J. E. Bigelow, shall be allowed to remove the said buildings from said premises at any time within 90 days after such failure to agree upon ground rent. But should the United States desire to sell the said ground before the full amount of said back rent shall have been paid, it shall be at the option of the defendant or his solicitor, J. E. Bigelow, either to have the said buildings sold, and any balance that may be due upon the back ground rent paid out of the proceeds of sale, and have the balance paid over to the said defendant or his said solicitor, or to pay such balance in cash, or allow the United States to continue to collect the rents of

said buildings until said past-due rents of said ground shall all have been paid. And should the United States sell said property, and the defendant or his said solicitor be unable to make terms of ground rent with the purchaser, or to sell to the purchaser, then the sale shall be made with the privilege to the defendant or his said solicitor to remove said buildings at any time within 90 days from the date of the sale, all past-due rents having been paid, and that whenever said property is turned over to the United States under this decree, then and from thenceforth the receiver, J. E. Bigelow, shall be discharged from future liability as receiver herein; and it is further agreed that no suit will be brought on the bond of said J. E. Bigelow as such receiver, filed herein, unless the United States should fail to realize all due ground rents under the above decree."

Subsequently to this decree Smith, the collector of customs, from time to time filed reports in this cause, sometimes styling himself "receiver," and sometimes "agent of the United States." On May 28, 1877, on application of defendant, "W. J. Smith, into whose hands the property involved in this cause was placed, as agent of the United States by a former decree," was required to report, etc. June 9, 1877, he filed a report styling himself "agent of the United States" for rents, etc. June 23, 1877, he filed a petition by the United States district attorney reciting that he had been appointed receiver by a former decree, and asking the court to authorize certain repairs, disbursements, etc., and an order was entered in compliance therewith, on the same day, authorizing "W. J. Smith, receiver," to make repairs, etc. January 28, 1878, on application of defendant, Smith was required to report without being styled either agent or receiver. February 22, 1878, he filed a report as "agent of the United States," and a like report was filed June 3, 1879, which, on the tenth of the same month, was confirmed as the report of "W. J. Smith, receiver," and, on his application, his commissions were fixed at 10 per cent. of his collections. In October, 1880, he filed a report as "agent of the United States," and another in like manner in February, 1881; and since this motion has been pending he files another report as "agent for the United States," by which it appears that he has paid into the treasury of the United States, from time to time, in all the sum of $1,500, the amount of rent in arrear at the date of the consent decree of March 1, 1876, and now has a balance in his hands of $174.82.

The defendant makes this motion asking for the appointment of a receiver, and a reference to a master to take proof and state Smith's accounts, showing not only his actual collections, but charging him with the rents he should have collected on a proper management of

the property, alleging that he has been neglectful and wasteful in the discharge of his duties, etc.

*W. W. Murray*, Dist. Atty., and *John B. Clough*, Asst. Atty., for the United States.

*J. E. Bigelow*, for defendant.

HAMMOND, D. J.   When this motion was first made it occurred to me that the court had no jurisdiction to grant it, or that it involved the exercise of authority beyond the power of the court to enforce, if the jurisdiction be conceded.   It may be assumed that the United States, whenever it comes into this court and brings its suit against a citizen, consents to submit to and carry out whatever decrees may be lawfully made against it in the ordinary course of the legal procedure.   But we have no jurisdiction here to decree against the United States for the delivery up of its property, or of that of the citizen in its possession, or to order accounts against its executive agents, or to decree the payment by them of the money of the United States.

We certainly do not enforce contracts *against* the United States, although we have jurisdiction to enforce them in its favor.   Section 1059 of the Revised Statutes enacts that—

" The court of claims shall have jurisdiction to hear and determine the following matters:   *First*, all claims founded upon any law of congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the government of the United States."

The case of *U. S.* v. *Bostwick*, 94 U. S. 53, was a suit in the court of claims founded upon a contract with the United States about the use and occupation of land and improvements thereon; and that of *De Groot* v. *U. S.* 5 Wall, 420, was a suit in that court upon an arbitration award on a similar contract, though it was brought under a special act of congress, and held to be not properly brought on the award which had been abrogated by congress.   The court there says of the rule that the United States cannot be sued for a claim or demand against it without its consent:

" This rule is carried so far by this court that it has been held that when the United States is plaintiff in one of the federal courts, and the defendant has pleaded a set-off which the acts of congress have authorized him to rely on, no judgment can be rendered against the government, although it may be judicially ascertained that on striking a balance of just demands the government is indebted to the defendant in an ascertained amount.   And if the United States shall sue an individual in any of its courts and fail to establish a claim, no judgment can be rendered for the costs expended by the defendant in his defence."

In *U. S.* v. *Eckford,* 6 Wall. 484, there was a suit in the court of claims for a balance alleged to be due a collector who had been sued by the United States in a district court, and had pleaded, as the statute allowed him, a set-off. The verdict was against the United States, and the jury certified that there was due him from the United States the amount sued for in the court of claims. It was held that neither in the original suit nor in the court of claims could there be a judgment against the United States for the balance. The court says:

"Where a party contracting with the United States is dissatisfied with the course pursued towards him by the officers of the government, charged with the fulfilment of the contract, his only remedy, except in the limited class of cases cognizable in the court of claims, is by petition to congress."

In *Schaumberg* v. *U.S.* 103 U. S. 667, it was held not to be error, where the statute allows set-off to be pleaded, to refuse to find or certify a balance due from the government, although under some circumstances it may be proper to do so. It was said:

"Claims for a credit can be used in suits against persons indebted to the United States to reduce or extinguish the debt, but not as a foundation of a judgment against the government."

In *Hall* v. *U. S.* 91 U. S. 559, it is said:

"Questions of the kind, where the United States is plaintiff, must be determined wholly by the acts of congress, as the local laws have no application in such cases." See, also, *Watkins* v. *U. S.* 9 Wall. 759–765.

In the case of *The Siren,* 7 Wall. 152, it was said:

"The same exemption from judicial process extends to the property of the United States, and for the same reasons. As justly observed by the learned judge who tried the case, there is no distinction between suits against the government directly, and suits against its property."

And the court, proceeding, uses this language:

"But, although direct suits cannot be maintained against the United States, or against their property, yet, when the United States institute a suit they waive their exemption so far as to allow a presentation by the defendants of set-offs, legal and equitable, to the extent of the demand made or property claimed, and when they proceed *in rem* they open to consideration all claims and equities in regard to the property libelled. They then stand in such proceedings, with reference to the rights of defendants or claimants, precisely as private suitors, except they are exempt from costs, and from affirmative relief against them, beyond the demand or property in controversy."

It was a case in which a prize vessel had damaged another by collision, the prize being in fault. When libelled at the suit of the United States in the prize court the owner of the damaged sloop

intervened and claimed his damages, and it was held that he was entitled to them. The effect of the principle we are considering was elaborately examined on authority with the above result. It was subsequently, in the case of *The Davis*, 10 Wall. 15, explained and confirmed. In that case a vessel and her cargo were libelled for salvage. The cargo belonged to the United States, but was not, when the suit was brought, in the actual possession of the United States, or its officers or agents, but in that of the master of the vessel, and the proceeds being in court, it was held that the claim for salvage could be enforced. The court said:

"That rule * * * admits that the lien can only be enforced by the courts in a proceeding which does not require that the property shall be taken out of the possession of the United States. But what shall constitute a possession which, in reference to this matter, protects the goods from the process of the courts? The possession which would do this must be an actual possession, and not that mere constructive possession which is very often implied by reason of ownership under circumstances favorable to such implication. We are speaking now of a possession which can only be changed under process of the court by bringing the officer of the court into collision with the officer of the government, if the latter should choose to resist. The possession of the government can only exist through some of its officers, using that phrase in the sense of any person charged on behalf of the government with the control of the property, coupled with its actual possession. This, we think, is a sufficiently liberal definition of the possession of property by the government to prevent any unseemly conflict between the court and the other departments of the government, and which is consistent with the principle which exempts the government from suit and its possession from disturbance by virtue of judicial process."

These cases are again further explained in *Case* v. *Terrell*, 11 Wall. 199, where it was adjudged that no judgment for money could be rendered against the United States in any court other than the court of claims without a special act of congress conferring jurisdiction, and that the appearance of the comptroller of the currency and a receiver of a bank appointed by him, submitting, through the district attorney, to the decision of the court in behalf of the United States, could not confer jurisdiction. And in *Carr* v. *U. S.* 98 U. S. 433, they again came before the court, and their effect as adjudications was explained. It was there determined that the appearance of the district attorney and special counsel employed to represent the government in actions of ejectment brought against its agents in possession did not estop the government to deny the jurisdiction. So in *Hart* v. *U. S.* 95 U. S. 316, it was ruled that the government is not responsible for the laches or wrongful acts of its officers or agents, and they

cannot be set up as a defence in suits of the United States against a defendant.

These authorities, and many others I have consulted, appended in a note, have confirmed me in the impression I first had, that we have no jurisdiction to appoint a receiver of property in possession of the United States, no power to enforce a surrender of it to a receiver, and no authority to call its agents into this court to account for its management of the property, no matter how the United States obtained the possession, whether through a decree of this court, in which it was a plaintiff, or otherwise. And in answer to the complaint that the court itself raised the objection, it may be said that the federal courts always decline jurisdiction on their own motion whenever it appears that they have no jurisdiction of the subject-matter in controversy. It is particularly the duty of all courts to do so where this prerogative of the government is involved. 8 Bac. Abr. tit. "Prerogative," (Bouv. Ed. 1861,) p. 106; *Barclay* v. *Russell*, 3 Ves. Jr. (Sumner's Ed.) 424. The defendant seeks to bring this case within the principle of that of *The Siren, supra*. It was evidently clearly within that case when first instituted, and so long as the property remained *in custodia legis*, and was in possession of a receiver of this court, we had full jurisdiction; and, if it had been so kept, there would be now no trouble about the jurisdiction. But whenever the defendant allowed it to pass from the control of the court *as a fact*, and into the actual possession of the United States, all power to relieve him here ceased from that moment, no matter what the intention of the court was, or of the parties, nor what the proper construction of the decree may be, nor what the rights of the parties under it may require, as against the United States.

It is impossible, in the nature of the case, for this court to retain control over it while it is in the possession of the United States or *its* agents, or for this court to wrest it from that possession, however much the defendant may be entitled to have that done. It does not alter the case to treat the United States as a receiver; for a claim founded on any breach of its duty in that behalf is as much beyond our jurisdiction as any other. If the decree had contained a stipulation to do just what the defendant contends its proper construction requires, the result would have been the same. We cannot enforce the stipulation. If it had been one of the stipulations that the United States would hold for this court and pay according to its decrees, the same difficulty would exist. But I do not think the decree subject to such a construction, there being no stipulation to that effect. It was,

in my judgment, a final decree evidencing a contract between the parties.    There is no reservation of jurisdiction to enforce the decree, and if there were it could not be carried out here.    As between private parties their conduct might be construed as continuing the case open to enforce the decree; but the government cannot be so bound by the acts of its officers, as I have shown.

There can be, in this case, no jurisdiction to enforce any personal liability of the collector of customs.    He is not our receiver and never was.    He holds his possession under regulations of the treasury department, and as its agent.    His accounting here is voluntary, and his misapprehension of his relations in the premises cannot give us jurisdiction.    It is plain the remedy of the defendant is by application to the executive department to carry out the stipulations of the decree, or to the court of claims to enforce them, or to congress to relieve him.

Motion denied.

NOTE.    Consult *Thompson* v. *U. S.* 98 U. S. 486, 489; *U. S.* v. *Gillis*, 95 U. S. 407, 412; *Avery* v. *U. S.* 12 Wall. 304; *Bonner* v. *U. S.* 9 Wall. 156; *Nations* v. *Johnson*, 24 How. 203; *Pennington* v. *Gibson*, 16 How. 65; *Reeside* v. *Walker*, 11 How. 272; *Hill* v. *U. S.* 9 How. 386; *U. S.* v. *Brown*, 9 How. 487, 500; *U. S.* v. *Buchanan*, 8 How. 83, 105; *U. S.* v. *Boyd*, 5 How. 29; *Gratiot* v. *U. S.* 4 How. 80, 112; *U. S.* v. *McLemore*, 4 How. 286; *Milner* v. *Metz*, 16 Pet. 221; *U. S.* v. *Robeson*, 9 Pet. 319; *U. S.* v. *Ringgold*, 8 Pet. 150; *U. S.* v. *Clark*, 8 Pet. 436; *U. S.* v. *McDaniel*, 7 Pet. 1; *U. S.* v. *Ripley*, 7 Pet. 18; *U. S.* v. *Fillebronne*, 7 Pet. 28; *The Antelope*, 12 Wheat. 546; *Hugh* v. *Higgs*, 8 Wheat. 697; *U. S.* v. *Barker*, 2 Wheat. 395; *U. S.* v. *Hooe*, 3 Cranch, 73; *U. S.* v. *La Vengeance*, 3 Dall. 297; *Meier* v. *Railway*, 4 Dill. 278; *U. S.* v. *Flint*, 4 Sawy. 42; *U. S.* v. *Austin*, 2 Cliff. 325; *The Othello*, 5 Blatchf. 342; S. C. 1 Ben. 43; *U. S.* v. *Collins*, 4 Blatchf. 142; *U. S.* v. *Davis*, 1 Deady, 294; *U. S.* v. *Smith*, 1 Bond, 68; *Wilder* v. *U. S.* 3 Sumn. 308; *Mezes* v. *Greer*, 1 McAll. 401; *Elliott* v. *Van Voorst*, 3 Wall. Jr. 299; *Fendall* v. *U. S.* 14 Court Claims, 297; *Goodman* v. *U. S.* 6 Court Claims, 146; 5 Am. Law Reg. 253; 11 Law Rep. (Boston,) 281.